162523, DSS Technology Management v. Apple Inc. Mr. Buther. Thank you, Your Honor. May it please the Court, the Court should reverse the Board's decision concluding that the challenge claims the 290 patent are invalid as obvious. And it should do so because the Board improperly used the subjective consideration of a person of ordinary skills, ordinary creativity to supply a key limitation that indisputably was missing from the one prior art reference that was at issue and doing so without any reasoned analysis or evidence that could be pointed to in the record to support this subjective filling of the gap. This Court in Arendi, of course, and in other decisions, has articulated several rules restricting the Board's use of subjective criteria such as common sense or objective creativity to supply such a key missing limitation. And it does so to prevent the impropriety of hindsight bias. What about the fact that the PTAB in its final written decision did at least say that it was persuaded by each of Apple's arguments? Doesn't that mean it incorporated those arguments? Well, who knows? I really don't think that's reasoned analysis to say that, well, he said, she said, and going through the recitation of the party's arguments and just saying, based on all of that, we think the challenger, the petitioner, should win. That is not reasoned analysis. There is no citing to any evidentiary support as to why a person of ordinary skill and the art would apply power conservation techniques to implement interference reduction. And those are the two key objectives of this patent, not just power conservation of batteries, but also the reduction of symbol interference with these wireless networks that could be in close proximity to each other. And in this case, I think the Board, ignored as may be too hard a word, but didn't pay sufficient regard to that second objective of reduction of interference and focused almost solely, in fact, it did focus solely on the issue of power conservation and then said there is a missing limitation here with regard to servers. It doesn't show that you use them in a, that servers are used in a low-duty cycle or are transmit in bursts at intervals which are determined by a code sequence, but simply said that you would apply the base stations, power conservation techniques for the mobile stations as taught in Natarajan. That does not result in a base station that transmits bursts in an otherwise quiet data channel. And the Court in its final decision, I'm sorry, the Board in its final decision construed the entire limitation to require that those RF bursts are transmitted, not just in bursts, but in bursts on an otherwise quiet data channel. And all the power conservation... Isn't that what a burst is? Well... It supposes that the background is quiet. Well, for the mobile stations, yes, they fire off the transmission and then they stop. But in order to satisfy and achieve that objective of reduction of interference, you not only need bursts which are short in duration relative to the entire process of communicating, but in order to reduce interference, you need to have this quiet data channel. You have to have no transmissions. And simply conserving battery power doesn't teach you anything about creating these otherwise quiet data channels where the reduction interference can be achieved. I could have bursts throughout the cycle. That doesn't get me reduction in interference. I can make sure that the mobile units turn off when they're not needed, which is the low-duty cycle concept. And turn on only when they are needed to transmit. That saves battery power. But if those changes to on and the transmissions are not carefully regulated to be short on an otherwise quiet data channel, the reduction in interference objective is completely lost. Let me ask you, one of my problems with sorting through this record, and of course the board's decision, is that it seems like during the hearing, the big focus was on the HDLC issue. Well, that was a secondary argument. I know it was your secondary argument, but it seemed like it was the focus of the hearing. Well, I think Apple successfully proved that the HDLC argument, which was that HDLC is not compatible with the 290 invention, and that was what the expert for DSS believed in the proceeding below. I think Apple successfully showed that that was not correct. So Apple, during the hearing, beat DSS over the head with that point, and it was a dead horse. We're not even challenging. Right, but at the time of the board's final written decision, you were still challenging it. And so the board focused on that question a lot. It did. Hindsight, they should have dropped it. It was a dead horse. So I guess my question is, if we sort all that out and put all that aside, if we agree with you that the board didn't do enough, is it a situation where we should be reversing the board's determination or remanding for further consideration? Reversing because there is nothing in Natarajan that teaches sending transmissions in bursts on an otherwise quiet data channel. That data channel that is disclosed in Natarajan is never otherwise quiet. Period A has constant, continuous transmissions by the base station to the mobile units. Period B has constant, continuous transmissions by the mobile stations to the base station. And Period C is a free-for-all. You know, it's this random access transmission, contention period is what they call that, where there is no provision for any quiet period during that period. Without Period C. Excuse me? Period C. Yeah, Period C. That's helter-skelter as far as I'm concerned. There is no teaching of creating a quiet data period within that period that could be used to accomplish the reduction in interference. But it theoretically could be quiet? I don't believe it could be quiet for the purposes of the 290 claim because the last limitation that's at issue requires that the intervals be determined by code sequences, and it is undisputed that it is completely at random in Period C. So there are no code sequences that prescribe a period of quiet, where there's no transmissions going on. So throughout the entire data channel of Natarajan, there's noise. There's activity. Or at least in Period C, there's the potential for activity, and most importantly, there is no provision for an otherwise quiet data channel or period on that channel. Natarajan discloses a single data channel, and it is never otherwise quiet. It is virtually constantly noisy. And it's that aspect of the limitation in the 290 claims and the goal of the 290 patent that I believe the board overlooked and Apple tried to pretend didn't exist, if you will, to not put any attention on there. Why is this technology so complicated? Well, it's not like in KSR where you're talking about a pedal that pivots. That's mechanical and fairly been around for a long time. In this technology, you're dealing with oscillators and synchronization and making sure that everybody is talking to each other when they're supposed to, or if not talking, they shut down. This is not simple. Well, it might not be simple to me, but could it possibly be simple or unusually simple, in the words of Arundhati, one of skill and the art? Well, I don't believe so since both sides called on PhDs to try and explain this technology and why it was disclosed or not disclosed by Natarajan. But interestingly, and I think significantly, the board never defined a person of ordinary skill in the art in this case. And I think that is maybe a telltale sign of its hindsight analysis or conclusory conclusion or unsubstantiated conclusion that this was obvious. If this ordinary creativity of a person of ordinary skill in the art would lead to applying the power conservation techniques to the base station, why don't you tell us who this ordinary person of skill in the art is? Apple said it was somebody with an undergraduate electrical engineering degree plus one to two years of work in mobile and wireless networks. You know this entire system is structured that this is a board of people who are experts who can understand the technology without the kind of instruction that a district judge would need. So I think that we don't need to overdo their absence of describing their expertise or that which is protected. But the general principle of powering down and thereby saving energy and so on I think does not require a degree of skill to understand the value of such a system. I don't dispute that powering down and powering up, but it's not so simple when you're dealing with a base station and all these mobile units that have to be synchronized. And in fact, Natarajan required all these slots to be assigned so that the mobile station could know when to wake up. So it's not just turning a light on or off type of a thing. The mobile stations have to be in total sync with the base station and therefore the assignment of slots which tell the mobile station I'm not going to talk to you for another 20 milliseconds or whatever the time frame may be, but at that exact moment you need to be up and on so you can get my message. That is not simple. And Apple doesn't think it's simple enough for anyone less than a double E with one to two years of experience. Well, not to understand the basic principle, but to actually implement it. And this is really the distinction, it seems to me, that we have a broad specification and the principle essentially of powering down and then operating in RF first rather than any other kind of power level or continuous power level. And to draw an adequate distinction between what's in the primary and what isn't, the board felt, whatever else, that that hadn't been drawn. Well, the specification of the 290 patent is very detailed about all of the pieces that need to work together in combination to produce this result. Well, all of the pieces, but no specific algorithm. Well, you didn't have to teach somebody how to code to make this happen. I mean, a person of ordinary skill in the art would know how to code to power up a mobile unit or power it down. But what took skills in the Arundi format, if you will, where it wasn't just a simple pivoting of a pedal, this is far beyond that. I don't think you can find a case where this court allowed the board to use these subjective criteria to fill in a gap involving technology of this level of complexity. And if it was so simple to tell us how you would modify Natarajan in order to apply this power-saving technique to the base stations, why didn't Apple tell us how this would be done? There is nothing in the record to tell us how this modification would be done and whether it would even work. How would you apply period C? They didn't have expert testimony to say it would have been obvious. Well, that was rebuttal testimony in a reply that was only made to respond to the HDLC arguments. The Hugh Declaration is not competent evidence to support their prima facie case. And our contention is here that they did not make their prima facie case, and so the Hugh Declaration is irrelevant. Two key points. One is that the board did not articulate a reasoned basis for filling in this gap. But the more fundamental thing is that even if you apply the power-saving techniques of mobile units to the base station, that does not get Apple where it needed to go, which is to show that that filled the gap of transmitting in bursts on an otherwise quiet data channel. So even if you did apply that technique in the mobile stations to the base station, that only deals with the power conservation goal. It does not satisfy the claim limitations requiring that the units transmit in RF bursts on an otherwise quiet data channel. Thank you, Your Honor. Okay. Thank you. Mr. Wright. May it please the Court. The board here applied the well-known obviousness rationale set forth in KSR where if a technique has been used to improve one device and a person of ordinary skill in the art would recognize that the technique would improve similar devices in the same way, use of that technique is obvious unless its application is beyond his or her skill. Can I get a concession from you, though, first, so we know we can get on with the real merits of this? You say in your brief that there's a difference between common sense and ordinary creativity, so therefore we shouldn't even consider a RENDI because that's a common sense case and we're talking ordinary creativity. I just don't see any light of day between those principles, and I'm not sure where you're coming up with that. So, yes, I concede that. And I think directly following that in our brief, we say it doesn't really matter. Okay. It's a distinction without a difference, I think. So I think the issue is whether this is a missing element case or not that brings it into a RENDI or whether it's not. And here the board applied, again, that well-known rationale of applying a technique that has been used to improve one device, and if a person of ordinary skill in the art recognizes that you could use that same technique to improve similar devices, use of that technique is obvious. Okay, but where in the record, other than the HUE declaration, that it comes in in reply, in response to the HDLC argument, where in your initial record do you have expert testimony that says that? So the board made three specific findings, or three key findings, with respect to what Natto Rajan teaches that support that. And these three factual findings are not listed. So you can see there's no expert testimony that you proffered on this point about what one of ordinary skill in the art would have learned. I think that the... And that's pretty much yes or no. You either had an expert declaration at your initial petition phase, or you did not. So, Appendix 1668, I think that's Dr. Grimes' testimony. What does he say on this point? So he says, turning on the transmitters for only the time necessary to transmit information as... I'm sorry. So... I want to come back to our three... So, the petition, just to get this out of the way, the petition focused on... So wait, can we just get an answer to my question? The answer to my question is no, but you think it doesn't matter. I think it doesn't matter, because we're not here to discuss or ascertain whether the petition was improvidently granted. I know, I don't doubt that, but the problem is that the expert testimony that we're allowed to consider has to be testimony that related to this question, because you had an obligation to satisfy your prima facie case, right? Right. And you're saying that one of skill in the art would have understood this. I get the fact that you have other arguments that you're going to make about what one of skill in the art could have just gleaned from Durant or however you pronounce that, but I just wanted to confirm that there was no expert testimony proffered on this point. With respect to the expert testimony that came with the petition, I think the petition was focused on what the mobile stations in Nata Brajan do, and that's frankly the focus of the 290 patent as well. It's all focused on what the peripheral stations do. Now, once trial was engaged and DSS focused on that point, the board interpreted Nata Brajan based on all of the evidence that came through in the course of the trial and made three key factual findings that are not disputed that support the board's obviousness rationale in this case. And those three findings are, first, that the transmitter in Nata Brajan's mobile stations are energized in low-duty cycle RF firsts. That point's not disputed. The second is that the transmitter in Nata Brajan's base station is the same transmitter that's used in its mobile station. That is, Nata Brajan's base and mobile stations use the same RF components. Well, it said it uses the same hardware, right? The same RF components, the same hardware. Okay. That's right. So there's no difference there in that Nata Brajan employs, and the third key undisputed finding is that Nata Brajan's ensemble employs the very same HDLC communication protocol that the 2.9.0 patent itself uses. And with those undisputed findings, the board relied on the well-known KSR rationale that if a technique is used to improve one device, namely Nata Brajan's mobile transmitter, and a person of ordinary skill in the art would recognize that it could prove a similar device in the same way, namely Nata Brajan's base transmitter, then that's obvious. And that takes the space out of a regular... But what is the... I mean, your friend on the other side is going to argue that it really isn't simply the same way because you have a whole different function that is being served at the transmitter. So I'll answer that in two ways, one at a high level and one at a very specific level. The 2.9.0 patent itself focuses on the peripheral devices in the same way that Nata Brajan does. So for example, in column one in the 2.9.0 patent, this is at appendix 92 at line 41, it stresses that this extremely low power consumption is particularly important for the peripheral units. Then when it talks about the invention at the top of column four in Nata Brajan, this is at appendix 93, it again focuses on the peripheral units. It says all the peripheral units share a common TDMA program. And then at line six, it says in the intervals between slots in which a PEA is to transmit or receive, all receive and transmit circuits are powered down. It's focusing on the PEA. Do you dispute that the patent also discusses the importance of the interplay between the transmitter and the peripheral unit? Between the transmitter, the role of the transmitter, and the peripheral units. Well, what the 2.9.0 patent has is a lot of discussion about how you synchronize the peripheral stations with the base station. And that's where you see, this is from column nine basically all the way over to column 11. That's just synchronizing a peripheral station with the base station. But even when you get down to the bottom of column 11, this is at appendix 97 in the 2.9.0 patent, it says utilization of the load duty cycle pulse mode, this is at line 47, transmission, particularly with the employment of uncorrelated codes and TDMA, it says leads to very low power consumption. Are you saying that the 2.9.0 doesn't even address or talk about how the base station should be configured to conserve power? That's right. The board specifically found that it does and that the reason it was obvious is because the prior art also could conceivably be applied to that same problem. So the high-level point I was trying to make was that the 2.9.0 patent, like not to Rajan, focuses on the peripheral units. It doesn't really explain how the base unit operates. But you conceded and the board found that there was a missing limitation. Are you trying to now argue there was no missing limitation? Apple has never conceded that there is a missing limitation in this case. We have to assume that there is because the board found that, right? I don't think that the board... If you want to support the board's finding and ask us to affirm the board's finding, then we have to assume there's a missing limitation, right? I don't think the board determined that there was a missing limitation. I think the board said that... So first of all, there's no dispute that this is a system claim and every single physical element in this claim is present in not to Rajan, every single one. And the technique of operating a transmitter in low-duty cycle RF bursts is taught in not to Rajan. And the obviousness rationale that the board applied at Appendix 31 is the application of a known technique that improves one device to a similar device. And that's precisely where the board can rely on the person of ordinary skill in the art under KSR. This is not a missing limitation case. It's almost as if Apple's being punished because we have everything in the same reference. But if you had all of the physical components in not to Rajan, and then you had in a separate reference the teaching that you could operate a transmitter in low-duty cycle RF bursts to save power, well, then we wouldn't be having this discussion. I don't see where the board found there was a missing limitation. And in fact, at the top of Appendix 32, if we go to the board's final written decision, this is right after its classic KSR rationale, which is on 31. But that's where it's talking about the HDLC protocol. That's right. That's a totally different question. It's not because the board says right at the top, we also find that not to Rajan's disclosure of HDLC protocol is consistent with not to Rajan's base units being energized in low-duty cycle RF bursts as that term is properly construed. And when you go back to the board's claim construction, and this is at the bottom of Appendix 13, the board takes its claim construction and effectively reads it on to not to Rajan's transmitter. It says energized in low- This is the problem, is that 90% of this, I know you talk about how long this opinion is, but it's almost all related to the HDLC issue that is not on appeal. The board relied on HDLC to find that not to Rajan's base station can operate in low-duty cycle RF bursts. And that's what the board says at the top of 32. I want to turn quickly to this otherwise quiet data channel argument that council raised. That's yet again a new technical argument that council's making that it did not make below. And it has completely confused the data channel with the communication cycle in not to Rajan. The communication cycle consists of what happens over the course of the three frames that not to Rajan describes. That's the communication cycle. The data channel, and I can point you exactly where the 290 patent describes this. The data channel exists between a PEA, the PDA in the 290 patent to a PEA. This is at the bottom of column five at line 65. So you have a number of virtual data channels set up between the server and the peripheral units, or not to Rajan between the base station and the mobile units. What not to Rajan describes is in the channel that you have between the base station and a mobile unit, you send an RF burst. And then that channel is quiet again. And then you get to where not to Rajan's base station communicates with the second device, and it sends an RF burst to that device. I'm describing frame A right now. And then that channel is otherwise quiet. And I don't want to get down, you know, into the weeds of this argument, but by making this new argument here, they've completely misinterpreted not to Rajan and confused the data channel with the communication cycle, one communication cycle. So let me ask you Judge Rainer's question again, which fits in with all. How does not to Rajan suggest that a base station should be configured to conserve energy when the patent only focuses on mobile devices? So Judge Newman, when you say the patent only focuses on mobile devices, the... This is Judge Rainer's question. Yeah. That's how he reads it. That not to Rajan... He says not to Rajan suggests that a base station should be configured to conserve energy when he says when the patent, I think he's talking about the patented issue, only focuses on mobile devices. No, I think he's talking about not to Rajan. You think that he's saying not to Rajan? So not to Rajan is focused on peripheral devices in the very same way that the 290 patent is focused on peripheral devices. But it would be configured as it is configured in the embodiment that's described in not to Rajan. And if you look over the course of that communication cycle at the three frames that are described in figures 5 and 6, or 4, 5, 6, and 7, over frame A, the transmitter is transmitting. It opens up a channel, a number of separate channels consecutively to the transmitters. Then over frame B, the transmitter is quiet in not to Rajan. It is not transmitting. And then over frame C, it's quiet most of the time. And if you look at the board's opinion at the bottom of claim 13, the board effectively reads its claim construction directly on to that communication cycle in not to Rajan. So it's configured the way that not to Juran describes it's operating. So for most of that communication cycle in not to Rajan, if we look at figure 6, not to Rajan's transmitter is not transmitting. Now over the course of the trial, DSS tried to say, oh, well, HDLC is incompatible with not transmitting all the time. They run away from that hard on appeal because what the board found is that HDLC supports Apple and that it would operate in low duty RF bursts. We're not talking about the HDLC alternative argument, are we? Well, it's important because the HDLC argument and Dr. Hughes' testimony that came out of that support Apple's position and the board relied on that to find that the claims are obvious. So during most of that communication, so first they tried HDLC and completely left that. Then they made this idle words argument. Oh, well, if it's not transmitting information, it's going to fill that in with idle words. They don't revive that on appeal either because it failed. They tried to convince the board through the course of the trial that over that communication cycle in figure 6, not channel, but over that communication cycle in figure 6, that not to Rajan's transmitter would have been continuously operated and they failed on the facts. The board didn't buy any of it and rightly so. So over the course of that channel, the transmitter is not operating most of the time. And that meets the board's construction of being energized in low duty cycle RF bursts. Again, this is not a missing element case. This case falls squarely into the KSR rationale of taking a known technique, a technique that's known to improve a device and a person of ordinary skill in the art recognizing that you could take that same technique and apply it to similar devices. Now you have both of them in not to Rajan, but that doesn't detract from the analysis. And that takes this case out of Arendi. And even if it were a missing element and part of Arendi, the board's rationale is supported by substantial evidence and fully fleshed out in its decision. Okay. Any more questions? No. Okay. Thank you, Mr. Wright. Thank you. Regarding missing limitation, Apple at its brief on page 29 says, first the board did not base its final determination of obviousness on any express disclosure regarding the Tarajan's server transmitter. So I believe the record is clear that there were two things missing in the Tarajan. One, a teaching that the base station would be turned off or turned on depending upon when it was needed to receive or transmit data. But most importantly, what was not taught in the Tarajan and had to be filled in but wasn't, is that the Tarajan did not teach an otherwise quiet data channel during which these transmissions, if you want to call them bursts, that's fine. Whether they were bursts or not is not the key point. The key point is that the Tarajan did not teach reserving these bursts to a small part of the data channel that is otherwise quiet. The Tarajan patent makes it clear that it involves one shared channel. So in order to determine whether it's quiet, you have to look at both server or base station transmissions and mobile unit transmissions. They have to be looked at together. And when you look at the Tarajan, virtually the entire data channel is not quiet, I think not at any time. There is no reservation for any quiet period at any point. What's your response to the argument that the 290 really doesn't focus on that much either? No, it does. The creation of a quiet period where there's no communications going on is critical to the objective of reducing interference. That's why the bursts have to be at intervals, and the board correctly interpreted that language to require that the bursts be short in duration and that the data channel has to be otherwise quiet. Otherwise you don't have this silent period where there's no interference danger. If the base station or the mobile units are constantly talking to each other or talking, there's no quiet period. There's no way to reduce interference. And so that's why the 290 patent requires this short duration of bursts with an otherwise quiet period so that during that otherwise quiet period you reduce the danger of interference. What's your response to the point that it says to the extent that the HDLC, even if you have now moved away from that argument or as your friend on the other side says, run as far away from it as you can, that it's still informative and still fair game for the board to consider? All it showed was that HDLC was not inconsistent, or to say it better, it was consistent with the 290 patent. It didn't teach an otherwise quiet data channel, and I submit it didn't even teach bursts on an otherwise quiet data channel. The board did not find that HDLC showed any of that, nor could it properly, because this was not part of their prima facie case. What about the point that really, regardless of whether the board usually does it or not, under the Administrative Procedures Act you're really supposed to look at the entirety of a record before you're making a patentability determination? Well, that's under the APA generally speaking, but this court has made it very clear that given the nature of IPR proceedings, it is incumbent upon the petitioner to state its case for invalidity in its petition and the supporting evidence, and it is entirely improper to allow the petitioner to then bootstrap reply brief arguments or evidence to support that. I think you said that, in fact. We won't reject the board's decision to reject reply arguments. And, you know, fair enough, I think I'm right about the law on that, that that's not competent evidence to support their prima facie case, but there is no evidence that HDLC discloses bursts on an otherwise quiet data channel. The only issue about that was DSS argued that HDLC was inconsistent with the teaching of the patent and the claim limitations. There was never any showing that HDLC taught any of those limitations. And, in fact, in its brief here, I don't have the page number in front of me, but Apple says that, or the board said, I think on page 33, that Apple has boiled its obviousness case down to Natarajan. It abandoned Neve, because Neve didn't really help it. So we're down to one prior art reference, Natarajan, which clearly did not teach transmitting in bursts on an otherwise quiet data channel, and applying the power conservation techniques that are used in mobile stations in Natarajan has nothing to do with filling that gap of a transmission in bursts on an otherwise quiet data channel. And so there's just no evidence to support the board's conclusion, and for that reason we think reversal is the appropriate remedy here, Your Honors. Okay. Thank you. Thank you, Your Honors. Thank you both. The case is taken under submission.